**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ANTHONY JOHNSON,**<br>**No. 38651-044,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**R. ROBINSON,**<br>**W. LIRIOS,**<br>**JAMES CROSS, and**<br>**UNKNOWN PARTIES,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 15-cv-00298-SMY** |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Anthony Johnson is a transgender inmate currently housed in the Greenville Correctional Institution.[1] Pursuant to 28 U.S.C. § 1331 and in accordance with *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), Plaintiff brings this action for deprivations of his constitutional rights as a consequence of his transgender status. She also contends that the privacy dictates of the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936 (1996), have been violated.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

[1] Plaintiff is transitioning from male to female. Although the Court must use Plaintiff's legal name, feminine pronouns will be utilized to refer to Plaintiff.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

According to the complaint, when Plaintiff Johnson arrived at FCI-Greenville in 2012 she was screened by Unit Manager Robinson. Robinson asked whether Plaintiff was diligently taking her HIV medications. Robinson went on to explain that she had a "system" for putting an end to sexual activity among homosexual inmates. Plaintiff attempted to distinguish her transgender status from homosexuality, but Robinson apparently did not appreciate the distinction. Robinson attempted to coax Plaintiff into seeking protective custody, but Plaintiff opted to be housed in the general population—a choice approved by a supervisor.

Plaintiff was initially taken to a three-person cell occupied by two gang members (at whose behest is unknown). Those inmates explained that their gang would not permit them to be celled with a transgender inmate. Consequently, Plaintiff was temporarily placed in an eight-person cell until Unit Manager Robinson could straighten out the placement issue. Plaintiff ended up staying in that cell for two months until she could speak with Robinson. During that

time, Plaintiff's relationship with her cellmates deteriorated. She and had to urinate multiple times per night but was assigned to a top bunk--she did not always make it to the toilet.

Robinson was outwardly hostile toward homosexuals and transgender inmates. She made of point of explaining that from her perspective Plaintiff was male (which upset Plaintiff). As a possible solution to her privacy and housing problems, Plaintiff proposed that she be allowed to participate in a reentry program that would entail being housed in a unit with two-person cells. A month passed and Robinson did not take any action on the proposal; when Plaintiff asked again, Robinson said she would look into the matter. Plaintiff's relatives even called the warden to explain Plaintiff's "transgender privacy situation." Plaintiff was eventually admitted to the reentry program. She was initially celled alone but was subsequently told by her counselor that Unit Manager Robinson insisted that Plaintiff have a cellmate—which was easier said than done particularly since Robinson had announced that she did not condone Plaintiff or homosexuality.

Plaintiff's counselor selected a homosexual male, inmate Davis, to be celled with Plaintiff. That pairing worked; however, Robinson began encouraging Davis to move out. After Davis indicated he wanted to continue to cell with Plaintiff, Robinson revealed to Davis that Plaintiff was $HIV^+$, which still did not dissuade Davis from living with Plaintiff. According to Plaintiff, Robinson then conspired with others to get Davis fired from his prison job, and caused Davis to lose good time credit.

In what Plaintiff characterizes as retaliation, attempts were made (by whom is unclear) to cell Plaintiff with transsexual inmates, who do not always get along with transgender individuals, like Plaintiff. Counselor Lirios, Unit Manager Robinson's subordinate, attempted to house Plaintiff with two gang members who were not open to celling with Plaintiff. On another occasion, Lirios called Plaintiff a "male" in front of the whole unit, and had gang members

approach Plaintiff about vacating the cell she had been occupying by herself. Plaintiff perceived that Robinson and Lirios were "trying to make [Plaintiff] have a female mental breakdown."

When Plaintiff tried to get a psychologist and the chaplain to intervene, Robinson and Lirios had Plaintiff set-up to be caught with contraband and punished, and to be issued multiple other incident reports. Warden Cross denied at least two of Plaintiff's grievance regarding his disciplinary conviction on the contraband charge. According to Plaintiff, each time she complained about retaliatory acts, she was threatened with more retaliation for having complained to the warden. It is further alleged that Robinson conspired with other unit teams to interfere with Plaintiff's mail.

Plaintiff claims that Unit Manager Robinson and Counselor Lirios, with the approval of Warden Cross, have caused her to suffer and lose good conduct time and unspecified "opportunities." She claims that: (1) the procedures in her disciplinary proceedings did not afford her due process; (2) she has been subject to retaliation; (3) she has been discriminated against; and (4) the release of her $HIV^+$ status violated HIPAA. Plaintiff seeks compensatory and punitive damages and injunctive relief in the form of expunging her record, restoring her good time credits, and relief from further retaliation.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1: Multiple decisions by Defendants Robinson and Lirios regarding Plaintiff's cell assignment endangered Plaintiff's safety, in violation of the Eighth Amendment;**

**Count 2: Multiple decisions by Defendants Robinson and Lirios regarding Plaintiff's cell assignment denied him equal protection, in violation of the Fifth Amendment;**

**Count 3: Defendant Warden James Cross denied Plaintiff due process in connection with discipline proceedings, in violation of the Fifth Amendment;**

**Count 4: Defendants Robinson and Lirios, and others, retaliated against Plaintiff for filing an administrative grievance, in violation of the First Amendment; and**

**Count 5: Defendant Robinson violated HIPAA by disclosing Plaintiff's HIV$^{+}$ status.**

## Discussion

### Count 1

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Furthermore, prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Proving deliberate indifference requires more than a showing of negligent or even grossly negligent behavior. *Id.* at 835. Rather, the corrections official must have acted with the equivalent of criminal recklessness. *Id.* at 836–37.

The allegations that Defendants Robinson and Lirios repeatedly attempted to house Plaintiff with inmates prone to harm her due to her transgender status, and then attempted to

disrupt safer housing arrangements, combined with the allegations that Robinson was openly hostile to Plaintiff because she is transgender or perceived as being homosexual, arguably fall with the ambit of the Eighth Amendment. At this early juncture, it cannot be conclusively determined that Robinson and Lorios were not deliberately indifferent to Plaintiff's safety. Therefore, Count 1 shall proceed.

**Count 2**

The Supreme Court has interpreted the Due Process Clause of the Fifth Amendment as forbidding the Federal Government from denying equal protection of the laws. *See Davis v. Passman,* 442 U.S. 228, 234 (1979); *Markham v. White* 172 F.3d 486, 491 (7th Cir. 1999). An equal protection claim can be made under a "class of one" theory alleging that the plaintiff has been treated differently from others similarly situated without a rational basis for the difference in treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

The allegation that, because Plaintiff is transgender and/or perceived as homosexual, Unit Manager Robinson and Counselor Lirios treated Plaintiff differently from other inmates in making housing decisions (impacting Plaintiff's safety), states a colorable equal protection claim—at least at this early stage in the proceedings. Count 2 shall proceed.

**Count 3**

The complaint refers to Plaintiff being denied due process relative to "multiple" incident reports/convictions. The narrative of the complaint and plethora of documentation attached to the complaint indicate that there were two disciplinary convictions: (1) a November 2013 charge of insolence; and (2) A January 2014 contraband charge. Defendant Warden James Cross denied Plaintiff's administrative grievances regarding those convictions (and, presumably, other

convictions), allegedly in violation of the Fifth Amendment. As pleaded, the complaint fails to state a colorable due process claim.

A plaintiff must show that the state deprived her of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).[2] The complaint asserts that Plaintiff lost good conduct credit, which would impact her term of imprisonment and thereby implicate a liberty interest. However, that assertion is belied by the documentation attached to the complaint, which does not indicate that Plaintiff lost good conduct credits. In any event, relative to Warden Cross, merely "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *see also McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013). A cause of action does not arise where a plaintiff files a grievance, and simply disagrees with the outcome. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005).

Because the narrative of the complaint is rather muddled, and the documents attached to the complaint are presented in a similarly disorganized fashion, Count 3 will be dismissed without prejudice.

**Count 4**

The complaint asserts that, after Warden Cross denied Plaintiff's grievance(s), Unit Supervisor Robinson and Counselor Lirios, individually and in conspiracy with others, retaliated against Plaintiff. In pertinent part, it is alleged that Plaintiff was set-up to receive multiple incident reports, gang members were prompted to approach Plaintiff about vacating her cell, and mailroom staff and others interfered with Plaintiff's mail.

---

[2] Case law interpreting the Fourteenth Amendment Due Process Clause is equally applicable to the Fifth Amendment's Due Process Clause. *Crowder v. True*, 74 F.3d 812, 814 (7th Cir. 1996).

Although only notice pleading is required, it is helpful to understand that to prevail on a First Amendment retaliation claim, a plaintiff must show that (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012) (internal citations omitted).

Retaliation for filing a grievance violates the First Amendment. *Id*. The issuance of a disciplinary report could be viewed as sufficient to chill one's First Amendment activities. Depending on how gang members approached Plaintiff, that could also have a chilling effect. However, the assertion regarding interference with Plaintiff's mail is too vague to implicate the First Amendment. In any event, who did what and when is not sufficiently pleaded—Plaintiff offers a broad, amorphous assertion that does not satisfy the *Twombly* pleading standard.

Insofar as Plaintiff implies that there is a conspiracy, the complaint does not adequately plead such a claim. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept*., 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.,* 197 F.3d 256, 263 (7th Cir.1999)).

Plaintiff offers only a bald assertion and nothing linking the named defendants to those who carried out the retaliatory acts.

Presumably, the unknown defendants referenced in the style of the case participated in the conspiracy. Because they are not identified within the narrative of the complaint (e.g., "John Doe #1 did x, y and z."), they could not proceed even if a colorable claim had been stated.

Count 4 will be dismissed without prejudice.

**Count 5**

Regardless of whether Unit Supervisor Robinson disclosed Plaintiff's private medical information, Plaintiff's claim under the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936 (1996), fails. HIPAA does not provide for a private cause of action. Rather, the Secretary of Health and Human Services may pursue action. 42 U.S.C. § 1320d-5(a)(1). *See also Acara v. Banks*, 470 F.3d 569, 570–72 (5th Cir. 2006); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010). Consequently, the Court lacks subject matter jurisdiction over this claim and Count 5 shall be dismissed with prejudice, relative to *Plaintiff* making such a claim.

**Disposition**

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 3**, the due process claim, is **DISMISSED without prejudice**; accordingly, Defendant **JAMES CROSS** is **DISMISSED without prejudic**e.

**IT IS FURTHER ORDERED** that **COUNT 4**, the retaliation claim, is **DISMISSED without prejudice**; the **UNKNOWN PARTIES** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 5**, the HIPAA claim, is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 1**, the endangerment claim, and **COUNT 2**, the equal protection claim, shall **PROCEED** against Defendants **R. ROBINSON and W. LIRIOS**.

The Clerk of Court shall prepare for Defendants **R. ROBINSON and W. LIRIOS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.

Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **R. ROBINSON and W. LIRIOS** are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings. Plaintiff's motion for leave to proceed as a pauper (Doc. 2) shall be decided by separate order of the undersigned district judge.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.

Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 13, 2015**

                s/ STACI M. YANDLE
                **United States District Judge**