UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY JOHNSON,

    Plaintiff,

v.

ROSALIND ROBINSON, WALESKA
LIRIOS, JAMES CROSS and UNKNOWN
PARTIES,

    Defendants.

Case No. 15-cv-298-JPG-RJD

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 72) of Magistrate Judge Reona J. Daly recommending that the Court grant the motion for summary judgment filed by defendants Rosalind Robinson and Waleska Lirios (Doc. 55). Plaintiff Anthony Johnson has objected to the Report (Doc. 73), and the defendants have responded to that objection (Doc. 74).

**I.    Standard of Review**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Because Johnson has objected to the Report, the Court reviews the matter *de novo*.

**II.    The Report**

At all relevant times, Johnson was a transgender inmate at the Federal Correctional Institution at Greenville, Illinois ("FCI-Greenville"). She was also HIV-positive. In this case,

she complains that the cell assignments made by Robinson and Lirios demonstrated deliberate indifference to her safety needs in violation of the Eighth Amendment (Count 1) and treated her differently than other similarly situated inmates without a rational basis in violation of the Fifth Amendment Equal Protection Clause (Count 2).

Magistrate Judge Daly adequately sets forth the history of Johnson's cell assignments since she arrived at FCI-Greenville in July 2012 until she filed this lawsuit in March 2015. Most pertinent to this case are events that occurred from December 4, 2013, to March 26, 2014, when Johnson was assigned to housing unit H2, where Robinson was the unit manager. At that time, Lirios was Johnson's correctional counselor and was responsible for cell assignments on housing unit H2.

When Johnson arrived in H2 on December 4, 2013, she was assigned to a three-man cell but was not assigned a cellmate. Other inmates harassed Johnson in an attempt to force her out of her cell. In March 2014, Lirios informed Johnson that the prison needed to vacate other cells and needed to house inmates in available empty beds. She told Johnson to try to find another inmate she could live with, but Johnson was unable to locate anyone. On March 25, 2014, Lirios assigned two inmates to Johnson's cell, but when Johnson told the defendants the inmates did not want to cell with her, the defendants did not make them move in with Johnson. Instead, the following day, Lirios assigned two different inmates to Johnson's cell. When the inmates showed up at Johnson's cell, one threatened Johnson verbally and with a knife and put his hands around her neck. She informed Robinson of the events, and Johnson was moved to the Special Housing Unit ("SHU") pending an investigation of an incident report charging her with refusing a housing assignment. Johnson was never forced to share a cell with any of the proposed cellmates. When

Johnson was released from the SHU, she was placed in housing units unconnected with Robinson or Lirios.

Magistrate Judge Daly found that Johnson had failed to exhaust administrative remedies for incidents occurring prior to December 4, 2013. Specifically, although Johnson had filed numerous administrative remedy requests while incarcerated by the Bureau of Prisons ("BOP"), she only properly pursued three grievances, all filed on April 1, 2014, through the entire administrative remedy process. Magistrate Judge Daly found that the only events arguably exhausted by the April 1, 2014, grievances were within the period of December 4, 2013, to March 26, 2014. Those events are described above. Johnson's complaints about all earlier events were not properly exhausted. Magistrate Judge Daly further found the statute of limitations had not run as to those events, a conclusion with which no party takes issue.

Magistrate Judge Daly further found that Johnson had no cellmates from December 4, 2013, to March 26, 2014, and that there was no evidence from which a reasonable jury could find Robinson or Lirios were deliberately indifferent to risks to Johnson's safety by assigning her cellmates in March 2014. Specifically, Magistrate Judge Daly found the danger Johnson faced never materialized, she no longer faces any harm, and there was no evidence of the defendants' malice, a requirement for liability where there is no harm. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996). In fact, she found no evidence that the defendants were subjectively aware of any specific risk posed by the inmates proposed to share a cell with Johnson.

As for Johnson's "class-of-one" equal protection claim, Magistrate Judge Daly found the defendants were entitled to qualified immunity because Johnson had not pointed to any case clearly establishing that there was a "class-of-one" equal protection claim for failure of a prison

3

official to give an HIV positive and/or transgender person her own cell.

### III. Objections and Analysis

#### A. Exhaustion of Administrative Remedies

Johnson argues that she should not have been required to exhaust her administrative remedies because prison officials intimidated and threatened to retaliate against her for doing so. She points to poor treatment she received from prison officials before her April 1, 2014, grievances to show their attitude toward her and the reasonableness of her fears of retaliation.

It is true that a prisoner plaintiff need only exhaust remedies that are "available" to her. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). A remedy is deemed to be unavailable if prison officials thwart inmates from using the administrative process by, for example, misrepresentation or intimidation. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

There is no evidence in this case that any prison official thwarted Johnson from filing a grievance and pursuing it through exhaustion.[1] Indeed, any suggestion she was thwarted from filing grievances is belied by the fact that she filed sixty-three of them and pursued three to their conclusion. Johnson may have been subjectively afraid of retaliation if she filed grievances because of poor treatment by prison officials in the past, but she has not tied any of her prior treatment to the act of seeking an administrative remedy such that her fear of retaliation would be reasonable. Without a reasonable fear, Johnson cannot be excused from the exhaustion requirement. Magistrate Judge Daly's Report was correct in its conclusions regarding exhaustion of administrative remedies.

#### B. Count 1: Eighth Amendment Deliberate Indifference to Safety

Johnson takes issue with Magistrate Judge Daly's conclusion that the defendants were not

---

[1] A claim for retaliation for filing grievances, Count 4, was dismissed without prejudice from this action for insufficient pleading (Doc. 4).

aware of any specific harm facing Johnson, asserting that the defendants "repeatedly assigned gang members to her cell, even after knowing that gang code requires them to physically harm a transgender person."  Pl.'s Obj. at 8 (Doc. 73).  She also asserts Robinson knew of a 2012 sexual assault on Johnson that was reported to her by another staff member.

As a preliminary matter, the evidence Johnson cites to support the proposition that the defendants knew gang code required her to be assaulted does not support that assertion.  In fact, there is no evidence showing that the defendants knew any inmate, much less the inmates assigned to Johnson's cell in March 2014, posed any threat to her or that the defendants placed those inmates there knowing they would attempt to assault her.  Instead, the evidence shows that, when Johnson arrived at FCI-Greenville in July 2012, Robinson offered her protective housing to protect her from dangers other inmates might pose because of her transgender status, but Johnson requested to be housed in general population.  Thereafter, Johnson never reported any risk of harm to Robinson or Lirios, and there is no evidence anyone else with knowledge of any risk of harm told Robinson or Lirios.  In fact, twice when returning from a writ (March 4, 2013, and May 24, 2013), Johnson reported that she had no reason to believe she should not be placed in general population and that she had never been sexually assaulted.  This information sheds light on the defendants' knowledge at the time of the administratively exhausted incidents, as discussed below.

In March 2014, when Lirios learned Johnson would need to be housed with others, she gave Johnson the opportunity to locate acceptable cellmates herself.  When Johnson did not identify anyone, Lirios assigned some.  Johnson told Lirios that the inmates proposed to house with her on March 25, 2014, did not want to be there.  Lirios did not force them to cell together and instead assigned two others to Johnson's cell.  When Johnson told Robinson about the March

5

26, 2014, incident when those two new proposed cellmates showed up at the cell, Johnson was removed to the SHU pending an investigation of whether she had refused a housing assignment. In the end, she was not forced to share a cell with the inmate who had threatened her. While the failure to better screen potential cellmates for Johnson might arguably amount to negligence, it is not deliberate indifference when Johnson herself asked to be in general population, declined protective housing, and never reported to Robinson or Lirios any adverse incidents. *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (noting that deliberate indifference requires a greater showing than mere negligence).

In sum, there is no evidence that either defendant knew Johnson faced a serious safety risk until March 25 and 26, 2014, and when they learned of that risk, they did not act with deliberate indifference. On the contrary, they removed Johnson from the risk. No reasonable jury could find this constituted deliberate indifference to a serious safety need or the kind of malicious exposure to harm necessary to find liability under *Babcock*. Magistrate Judge Daly was correct in this regard.

C.     Count 2:   Equal Protection "Class of One" Claim

In her objection, Johnson argues that the right to be protected from violence perpetrated by other inmates was clearly established at the time of the incidents described in her complaint. She suggests that she was treated differently than other transgender inmates or HIV-positive inmates without a rational reason because she was not allowed her own cell, as at least some other transgender or HIV-positive inmates were.

It is true that the law requiring the duty of prison officials not to be deliberately indifferent to inmates' safety needs was established long before the events giving rise to this case. This is

why the defendants were not protected by – indeed, they did not ask for the protection of – qualified immunity on Johnson's Eighth Amendment claim in Count 1.

However, as for her Fifth Amendment "class-of-one" equal protection claim, it was not clear at the time what was necessary to support such a claim. At a minimum, to prove this cause of action a plaintiff must show she "was intentionally treated differently from other similarly situated individuals and that there was no rational basis for this difference in treatment." *Thayer v. Chiczewski,* 705 F.3d 237, 254 (7th Cir. 2012). There may also be other requirements, but there is no consensus in the courts. *Id.; see Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (*en banc*) ("The law concerning 'class of one' equal-protection claims is in flux....").

Johnson has not pointed to any caselaw clearly establishing that the housing decisions made by Robinson or Lirios intentionally treated her differently from other transgender and/or HIV-positive inmates without any rational basis. Indeed, with the multitude of factors that go into making individual housing decisions in any prison, clearly establishing the contours of that equal protection right would likely require a case deciding a factually similar situation, and Johnson has pointed to no such case. It is Johnson's burden to show a right was clearly established such that "every reasonable officer would have understood that what he was doing violate[d] that right," *Thayer*, 705 F.3d at 255, and she has not carried that burden for her "class-of-one" claim.

D.   Other Objections

Johnson's other objections allege Magistrate Judge Daly failed to take into account her transgender and HIV-positive status. Those objections have no merit. Underlying her entire Report is the understanding that Johnson may face additional risks because of those factors, and

7

each was considered implicitly in the Report's discussion and analysis.

## IV. Conclusion

Following a *de novo* review and for the foregoing reasons, the Court hereby:

- **ADOPTS** the Report in its entirety (Doc. 72);

- **OVERRULES** Johnson's objections (Doc. 73);

- **GRANTS** the motion for summary judgment filed by Robinson and Lirios (Doc. 55);

- **DENIES as moot** Johnson's motion for a writ of *habeas corpus ad testificandum* (Doc. 70) the defendants' motion to continue the trial (Doc. 75); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: November 13, 2017**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**